Brent A. Hawkins (CSB # 314266)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel: (415) 442-1000
Fax: (415) 442-1001
brent.hawkins@morganlewis.com

Kevin J. Post (*pro hac vice* forthcoming)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
kevin.post@ropesgray.com

*Attorneys for Applicants*
***HP Inc. and HP Deutschland GmbH***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| *In re Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 Authorizing Discovery for Use in Foreign Proceedings of<br><br>HP Inc. and HP Deutschland GmbH,<br><br>Applicants. | Case No. 5:24-mc-80120<br><br>**DECLARATION OF STEPHAN DORN IN SUPPORT OF EX PARTE APPLICATION OF HP INC. AND HP DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

Pursuant to 28 U.S.C. § 1746, I, Stephan Dorn, declare as follows:

1. I am an attorney admitted to practice in Germany and an associated lawyer and Counsel in the Dusseldorf office of the law firm Freshfields Bruckhaus Deringer PartG mbB, which represents HP Inc. and HP Deutschland GmbH in two lawsuits in Germany (each a "German Proceeding" and, together, the "German Proceedings") brought by Nokia Technologies Oy ("Nokia").

2. I studied law at the Rheinische-Friedrich-Wilhelms-University Bonn and completed my Referendariat (legal clerkship) in the circuit of the Cologne Higher Regional Court. I have been admitted as an Rechtsanwalt (attorney at law) to practice before the German courts since 2013.

3. Before joining Freshfields, I worked at Hogan Lovells International LLP in the field of patent litigation for six years.

4. In 2011, I completed Dr iur (PhD in law) studies at the Rheinische-Friedrich-Wilhelms-University Bonn with a doctoral thesis published under the title "Technische Standardisierung im Spannungsfeld von Immaterialgüterrecht, Kartellrecht und Innovation" (Technical Standardization in the Field of Conflict between Intellectual Property Law, Antitrust Law and Innovation), supervised by Prof Dr Matthias Leistner, LL.M. (Cambridge), holding the Chair for Civil Law, Intellectual Property and Competition Law at the Rheinische-Friedrich-Wilhelms-University Bonn.

5. I submit this Declaration in support of HP's Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings. I make this Declaration based on my own personal knowledge and documents that I have reviewed.

BACKGROUND OF THE PARTIES' DISPUTE

6. In the German Proceedings Nokia asserts that HP has infringed Nokia's Patents. In particular, Nokia alleges that its patents are essential to the ITU-T Recommendation H.265: High Efficiency Video Coding ("HEVC standard"), and that HP infringed its patents by implementing this standard in HP's products.

7. In the German Proceedings, Nokia is currently asserting that HP infringed two patents (collectively, the "Nokia Patents"):

EP 2 774 375 ("EP 375"), titled "Method and apparatus for video coding", filed by Nokia on November 2, 2012.

EP 2 375 749 ("EP 749"), titled "System and method for efficient scalable stream adaptation", filed by Nokia on October 11, 2006.

8. The German Proceedings are pending in the Munich I Regional Court (the "German Court"). Nokia initiated the German Proceedings in November of 2023. In one of the German

Proceedings, Nokia has asserted the infringement of EP 375 (docket number 7 O 14901/23). In the other German Proceeding, Nokia has asserted the infringement of EP 749 (docket number 7 O 14902/23).

9. HP has also commenced parallel nullity proceedings seeking to invalidate the Nokia Patents: For the German Proceedings, HP Deutschland GmbH filed nullity actions on May 14, 2024, before Germany's Federal Patent Court—the German court exclusively competent to hear nullity complaints for the Patents asserted in the German Proceedings.

10. HP has become aware, and Nokia has confirmed, that Nokia has concluded a set of agreements with third parties (the "Third-Party Agreements") concerning patents owned by Nokia, potentially including the Nokia Patents. Existing rights relating to the Nokia Patents are relevant for the determination of the overall value and appropriateness of the portfolio license terms offered by Nokia to HP. Specifically, if the Nokia Patents are deemed "essential" to the HEVC standard, the German Court (or court sitting in appeal therefrom) will consider the Third-Party Agreements regarding the Nokia Patents as part of HP's potential defense based on Nokia's obligation to offer reasonable, and non-discriminatory ("RAND") licensing terms.

11. Even though HP has asked Nokia for the Third-Party Agreements, Nokia has refused to provide them.

HP'S REQUESTED SECTION 1782 DISCOVERY

12. I have reviewed the document requests that HP seeks to serve on Nokia through its instant application pursuant to Section 1782, which are set forth in **Exhibit A**. Specifically, HP requests that Nokia produce any of Nokia's license agreements related to the Nokia Patents or otherwise declared essential to the HEVC Standard, Nokia's documents and communications related to the negotiation of those license agreements, and Nokia's documents related to the royalties received under those license agreements. These requested documents are relevant to determining the appropriate royalty rate (RAND or otherwise) for any of Nokia's patents that HP is found to infringe and for evaluating whether Nokia complied with its RAND obligations.

13. For the reasons described above, the discovery HP seeks will materially assist the German Court, including any court sitting in appeal therefrom, in adjudicating the dispute between

Nokia and HP. The discovery that HP seeks will impact the overall value of the portfolio license terms offered by Nokia to HP, which the German Court will also have to assess.

14. If the instant application pursuant to Section 1782 is granted, HP would be willing to enter a protective order limiting HP's use of the requested documents to the German Proceedings. A proposed protective order is attached to the application as **Exhibit B**.

AUTHORITY OF THE GERMAN COURT

15. Germany is a civil law country where the concept of discovery and/or document production does not exist under procedural law. Furthermore, under German law, a German court does not have authority to compel a party to provide documents.

16. Thus, the German Court cannot compel Nokia to produce the Third-Party Agreements, even though such documents are directly relevant and highly material to the issues raised by HP in the German Proceedings. The German Court can only request the submission of documents particularly specified or referenced by a party to the German Proceedings and does not have the authority to investigate or to order the investigation of facts or documents not already specified by the parties to the action. Furthermore, the German Court is not authorized to compel a party of the German Proceedings (Nokia) to submit documents at all.

17. Based on the rules explained above, even if the German Court decided that Nokia should produce the Third-Party Agreements to HP, the German Court could not compel Nokia to do so, and Nokia has thus far opposed providing these documents.

RECEPTIVITY OF THE GERMAN COURT TO EVIDENCE PROCURED THROUGH US DISCOVERY ASSISTANCE

18. While German courts cannot order the type of discovery available through Section 1782, they will nevertheless be receptive to evidence obtained through Section 1782 proceedings in the United States. Under German law, any documents obtained pursuant to Section 1782 can be formally introduced into the German Proceedings, and the German Court, including the court overseeing any appeal of the German Proceeding concerning EP 749 and EP 375, would consider this evidence—without prejudice to decisions about the admission and consideration of any

particular document introduced according to general German rules regarding the admissibility of evidence.

19. Specifically, due to the constitutional right of access to the courts according to article 103 para 1 of the German Basic Law, and the obligation to investigate the facts of the case to the extent possible (and necessary) according to Section 286 para. 1 of the German Code of Civil Procedure, German courts must generally consider all evidence submitted into legal proceedings. See Federal Supreme Court, decision of 19 June 2002, NJOZ, 2002, 2019 el sew. While there is no Federal Supreme Court decision addressing the issue of Section 1782 discovery specifically, the Federal Supreme Court of Germany has confirmed that the enforcement of a US judgement in Germany is not precluded when the judgment was based on evidence obtained in pre-trial discovery proceedings in the United States. See Federal Supreme Court, decision of 4 June 1992, NJW 1992, 3096, 3099 (holding that the reliance on evidence obtained through US discovery does not violate German public order). German literature has interpreted this holding as supporting German courts' receptivity to submission of evidence obtained pursuant to Section 1782. See, e.g., Schonknecht, Beweisbeschaffung in den USA zur Verwendung in deutschen Verfahren, GRURInt 2011, 1000, 1007 with reference to Eschenfelder, Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren, RIW 2006, 443, 447; see also Müller-Stoy, Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens, GRUR Int. 2005, 558, 563.

20. Furthermore, there is no law, rule of evidence, or rule of procedure in German civil proceedings that prohibits a party from seeking discovery pursuant to Section 1782, and then using any evidence obtained through a Section 1782 application in German court proceedings. Rather, the presentation of documents is generally admissible evidence in Germany, see Section 415 Code of Civil Procedure; "Urkundenbeweis," and HP is entitled to submit evidence in support of its position in German proceedings, regardless of whether the evidence has been obtained pursuant to Section 1782.

21. Indeed, I have personally submitted information and documents, including license agreements like those requested by HP here, that were obtained pursuant to discovery proceedings under 28 U.S.C. § 1782 in several German proceedings. In none of those cases did the court ever

doubt whether such evidence was admissible. In all cases, the court simply proceeded to take the evidence into consideration.

22. As the German Court would accept the formal introduction of the documents that HP requests here, a US court's order requiring the production of these documents would not offend the German Court or violate any order of such Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15 day of May 2024, at Düsseldorf, Germany.

/s/ Stephan Dorn